505 S.E.2d 210

**STATE of West Virginia ex rel. WEST VIRGINIA FIRE & CASUALTY COMPANY and Joe Kirtner, Petitioners,**

**v.**

**Honorable Mark A. KARL, Judge of the Circuit Court of Marshall County, Jimmy Lee Price and Nora Lee Price, Respondents.**

No. 25046.

Supreme Court of Appeals of
West Virginia.

Submitted June 2, 1998.

Decided July 6, 1998.

Catherine D. Munster, James A. Varner, Tiffany R. Durst, McNeer, Highland,

McMunn & Varner, Clarksburg, for Petitioners.

Robert P. Fitzsimmons, Thomas C. Schultz, Michael W. McGuane, Wheeling, for Respondents.

## PER CURIAM: [1]

West Virginia Fire and Casualty Company (hereinafter "Fire and Casualty") seeks a writ of prohibition to prevent the release of claims files in infant settlement cases, as ordered by the Circuit Court of Marshall County. Fire and Casualty maintains that disclosure of such documentation would violate the privacy rights of non-litigant individuals. Balancing the privacy rights of the unrelated non-litigants against the discovery interests of the plaintiffs, we conclude that Fire and Casualty should be required to produce redacted copies of the infant claim portions of the requested claims files. We therefore grant the requested writ, as moulded.

The underlying matter involves a civil action filed by Jimmy Lee Price and his mother Nora Lee Price against Fire and Casualty, alleging violations of the Unfair Claims Settlement Practices Act, as contained in West Virginia Code § 33–11–4(9) (1985): [2] the tort

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4. (1992).

2. West Virginia Code § 33–11–4(9) provides as follows:

Unfair claim settlement practices.—No person shall commit or perform with such frequency as to indicate a general business practice any of the following:

(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies;

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when such insureds have made claims for amounts reasonably similar to the amounts ultimately recovered;

(h) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(i) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(j) Making claims payments to insureds or beneficiaries not accompanied by a statement setting forth the coverage under which payments are being made;

(k) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(*l*) Delaying the investigation or payment of claims by requiring an insured, claimant or the

of outrage; and fraud. The Prices contended that Fire and Casualty paid $7,000 as settlement and obtained a settlement release. from the Prices in violation of the Unfair Claims Settlement Practices Act. Jimmy Price was injured on December 26, 1995, at the age of thirteen, while being pulled on an inner tube on the snow. He was struck by a vehicle owned and operated by an individual insured by Fire and Casualty and was thrown into a parked vehicle, causing permanent injuries, including significant brain injury, frontal epidural hematoma, and a frontal contusion. As a result of his injuries, he suffers impairment in his attention and language skills, verbal conceptual skills, word fluency skills, and visual and reading abilities. On March 6, 1996, Fire and Casualty adjuster Joe Kirtner approached Jimmy Price's mother, Nora Price, and procured a settlement with a full and complete release of her minor son's claim, in exchange for the settlement amount of $7,000,[3] despite clear liability, medical bills in excess of $10,000, and significant brain injury. The civil action was filed on April 29, 1996. ·

Our first opportunity to address this civil action occurred in *State ex rel. West Virginia Fire & Casualty Co. v. Karl,* 199 W.Va. 678, 487 S.E.2d 336 (1997), syllabus point two of which provided as follows: *"W.Va.Code,* 44–10–14 [1929] does not require court approval of all claims where a guardian executes a settlement agreement on behalf of a minor who has been injured in his or her person or property." 199 W.Va. at 679, 487 S.E.2d at 337. In that appeal, Fire and Casualty also maintained that the lower court exceeded its authority in ordering the production of Fire and Casualty's claim files concerning other infant settlements[4] not approved by the circuit court.[5] In discussing that particular allegation, we stated: "Our determination herein is not dispositive of the discovery and

physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(m) Failing to promptly settle claims, where liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage;

(n) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement;

(o) Failing to notify the first party claimant and the provider(s) of services covered under accident and sickness insurance and hospital and medical service corporation insurance policies whether the claim has been accepted or denied and if denied, the reasons therefor, within fifteen calendar days from the filing of the proof of loss: Provided, That should benefits due the claimant be assigned, notice to the claimant shall not be required: Provided, however, That should the benefits be payable directly to the claimant, notice to the health care provider shall not be required. If the insurer needs more time to investigate the claim, it shall so notify the first party claimant in writing within fifteen calendar days from the date of the initial notification and every thirty calendar days, thereafter; but in no instance shall a claim remain unsettled and unpaid for more than ninety calendar days from the first party claimant's filing of the proof of loss unless there is, as determined by the insurance commissioner, (1) a legitimate dispute as to coverage, liability or damages; or (2) if the claimant

has fraudulently caused or contributed to the loss. In the event that the insurer fails to pay the claim in full within ninety calendar days from the claimant's filing of the proof of loss, except for exemptions provided above, there shall be assessed against the insurer and paid to the insured a penalty which will be in addition to the amount of the claim and assessed as interest on such at the then current prime rate plus one percent. Any penalty paid by an insurer pursuant to this section shall not be a consideration in any rate filing made by such insurer.

3. Mrs. Price has an eighth grade education, is an epileptic, and is a low income single mother.

4. Fire and Casualty has admitted that there have been up to 75 similar settlements without approval involving minors within the past nine years. By order dated February 3, 1997, the lower court had directed Fire and Casualty to produce all claims files where Fire and Casualty had settled infants' bodily injury claims in West Virginia without court approval from 1986 through 1996. While the privacy concerns addressed in this opinion have consistently been raised, no issues concerning attorney-client privilege or work product have been raised.

5. The lower court determined that these claims files were relevant, and the Prices indicate that these claims files may be utilized to show other bad acts, to demonstrate a general business practice, or to identify a proposed class. The relevancy of the files is not an issue in this proceeding.

bad faith issues which are properly within the province of the trial court in the underlying, pending proceedings." 199 W.Va. at 683, 487 S.E.2d at 342. In footnote six of *Karl*, we further explained:

We decline the petitioners' request that we address the issues of: whether the respondents should or should not be entitled to pursue discovery of claim files or other information regarding other infant settlements to prove violation of W.Va.Code, 33–11–4(9) [1985] and to prove punitive damages, cf. *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992) (evidence of other unfair acts is relevant to establish a violation of W.Va. Code, 33–11–4(9) [1985] ); cf. also *Poling v. Motorists Mut. Ins. Co.*, 192 W.Va. 46, 450 S.E.2d 635 (1994) (punitive damages available under W.Va.Code, 33–11–4(9) [1985] ); cf. also *Colonial Life and Accident Ins. Co. v. Perry*, 31 Cal.3d 785, 183 Cal.Rptr. 810, 647 P.2d 86 (1982) (writ of prohibition denied, discovery of claim files permitted); whether the respondents may obtain discovery regarding or otherwise seek class certification, cf. *Burks v. Wymer*, 172 W.Va. 478, 485, 307 S.E.2d 647, 654 (1983) ("[I]n most cases, an exploration beyond the pleadings is essential to make an informed judgment on the propriety of a proposed ... class action."); whether misleading or failing to inform parents regarding the terms of an infant settlement may be an unfair claims settlement practice under .W.VA. CODE, 33–11–4(9) [1985]; and whether the respondents must void a completed infant settlement which did not receive court approval before maintaining an action for unfair claims settlement practices under W.VA. CODE, 33–11–4(9)

[1985]. These are matters which are within the province of the circuit court in the underlying, pending cases.

*Id.*

Subsequent to our first opinion in *Karl*, Fire and Casualty filed a Motion to Reconsider the lower court's order requiring the production of unrelated non-litigant infant settlement claim files resolved without court approval in the last ten years. Fire and Casualty contended that production of such files in their entirety would violate the privacy rights [6] of the non-litigants and could subject Fire and Casualty to liability for the production of confidential information of the non-litigant individuals. Fire and Casualty presented a potential resolution to the privacy issue, relying upon a California resolution of a similar discovery dispute in *Colonial Life & Accident Insurance Co. v. Superior Court*, 31 Cal.3d 785, 183 Cal.Rptr. 810, 647 P.2d 86 (1982), a case also cited with approval by this Court in the first *Karl* opinion. *Colonial Life* approved a mechanism designed to permit discovery of relevant information without violating the privacy interests of non-litigants by directing that a letter of consent to release information be sent to all the non-litigant individuals whose records were sought. *Id.* at 812, 647 P.2d at 88. In the instant case, Fire and Casualty proposed the same approach and volunteered to draft such letter and mail it to the non-litigant individuals.

The lower court, by order dated February 13, 1998, declined to adopt Fire and Casualty's suggested resolution and reaffirmed its prior order requiring the production of the requested claims files, relying upon its own protective order [7] to preserve the interests of

---

**6.** The Prices contend that the right of privacy is waived by virtue of the West Virginia Insurance Commissioner's regulation opening an insurer's claims files to inspection by the Commissioner. The Prices also contend that a party waives his privacy rights by providing his medical and other records to the insurance company. We do not accept these contentions that the non-litigants have waived all privacy rights.

**7.** The lower court's protective order, dated February 3, 1997, expresses the lower court's finding that "because these other claims may contain medical records of individuals not parties to this

action that a protective order should be utilized to protect the privacy interests of the other individuals identified in other claims." The lower court's order further provided as follows:

[A]ny file produced by the defendants shall not be shown or disseminated to any other persons other than to the plaintiffs, their counsel and any experts retained by plaintiffs. Any experts so retained by plaintiffs shall not disseminate any information contained within the said files other than to plaintiffs and their counsel. Plaintiffs may utilize said claims files in conducting any depositions in this proceeding; however, the deposition testimony shall not be

the non-litigants. In that February 13, 1998, order, the lower court also noted, in determining the relevancy of the requested discovery, that claims adjuster Joe Kirtner had admitted multiple misrepresentations, violations of the Unfair Claims Settlement Practices Act, false statements, and violations of the West Virginia insurance regulations in the Price settlement. The court also noted that supervisory personnel had admitted multiple misrepresentations and violations of statute and regulations. The court further acknowledged that the Prices' complaint requests class certification and punitive damages.

■ Fire and Casualty thereafter filed this writ of prohibition attempting to prevent the lower court from enforcing the production of the claims files. In syllabus point one of *State Farm Mutual Automobile Insurance Co. v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992), we explained that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."

■ Rule 26(b) of the West Virginia Rules of Civil Procedure provides as follows:

(b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:

(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

disseminated to any persons not a witness in

The frequency or extent of use of the discovery methods set forth in subdivision (a) shall be limited by the court if it determines that:

(i) The discovery sought is unreasonably cumulative or duplicative or is obtainable from some other source that is more convenient, less burdensome, or less expensive;

(ii) The party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or

(iii) The discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

Subdivision (c) of Rule 26 provides:

(c) Protective Orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) That the discovery not be had;

(2) That the discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters;

(5) That discovery be conducted with no one present except persons designated by the court;

(6) That a deposition after being sealed be opened only by order of the court;

(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;

this proceeding or expert retained by plaintiffs.

(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be open as directed by the court.

In determining the conditions under which discovery may be limited, we explained in syllabus point two of *Stephens:*

> Under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, a trial court may limit discovery if it finds that the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation.

Syllabus point three of *Stephens* further instructed as follows:

> Where a claim is made that a discovery request is unduly burdensome under Rule 26(b)(1)(iii) of the West Virginia Rules of Civil Procedure, the trial court should consider several factors. First, a court should weigh the requesting party's need to obtain the information against the burden that producing the information places on the opposing party. This requires an analysis of the issues in the case, the amount in controversy, and the resources of the parties. Secondly, the opposing party has the obligation to show why the discovery is burdensome unless, in light of the issues, the discovery request is oppressive on its face. Finally, the court must consider the relevancy and materiality of the information sought.

■■■ Weighing the requesting party's need to obtain the information against the burden that producing the information places upon Fire and Casualty, we must be cognizant of the privacy rights of non-litigant third parties. Balancing the interests of the party litigants against the privacy rights of the non-litigants whose claims files are sought, we conclude that Fire and Casualty should be required to produce redacted copies of the infant claim portions of the requested claims files. Fire and Casualty may adequately protect the privacy interests of the non-litigants by redacting the names, addresses, personal medical information, and other identifying material from the records. As the Court of Appeals of Texas recognized in *Alpha Life Insurance Co. v. Gayle,* 796 S.W.2d 834 (Tex.App.1990), the insurer's "interest in protecting the privacy rights of its claimants clearly outweighs any right the real parties in interest have to discover the identities of the other claimants." 796 S.W.2d at 836. Upon completion of redaction, the infant claim portion of the requested files shall be produced.

Subsequent to production, if any party seeks additional information or testimony which would necessitate release of any non-litigant's name or personal information, that party can petition the lower court for the production of such information. One possible approach which might be taken at such juncture would be that approved in *Colonial Life,* wherein the court directed that letters of consent be required prior to release of any personal or identifying information from any non-litigant. The content of such letters would be subject to prior court approval.

In the present posture of the case, however, redaction protects the privacy interests of the non-litigants while also affording the plaintiffs adequate discovery privileges. We therefore grant the requested writ, as moulded.

Writ granted as moulded.

McCUSKEY, J., deeming himself disqualified, did not participate in the decision in this case.

HATCHER, Judge, sitting by temporary assignment.