550 S.E.2d 646 (2001)
209 W.Va. 668
STATE of West Virginia ex rel. WESTBROOK HEALTH SERVICES, INC., Petitioner,
v.
Honorable George W. HILL, Jr., Judge of the Circuit Court of Wood County, and Helen J. Wilson, Respondents.
No. 28591.
Supreme Court of Appeals of West Virginia.
Submitted January 9, 2001.
Decided July 2, 2001.
*648 Robert J. Kent, Esq., C. Edward McDonough, Esq., Bowles Rice McDavid Graff & Love, PLLC, Parkersburg, West Virginia, Attorneys for Westbrook.
Barbara G. Arnold, Esq., Parkersburg, West Virginia, Attorney for Wilson.
*647 PER CURIAM:
Petitioner, Westbrook Health Services, Inc. (Westbrook), invokes this Court's original jurisdiction and seeks a writ of prohibition against the Honorable George W. Hill, Jr., Judge of the Circuit Court of Wood County, West Virginia, to prevent the enforcement of an order entered on November 14, 2000. The order granted Helen J. Wilson's motion to compel more complete discovery, motion to compel testimony, motion to compel production of documents, and motion for sanctions. We issued a rule to show cause and now deny the writ.

I.

FACTS
Westbrook is a non-profit corporation that provides health care services by doing business in Wood County. The underlying claim arose when Ms. Wilson was laid off from employment with Westbrook on April 6, 2000 after working for the company for eighteen years. Wilson filed an action against the company on June 7, 2000, alleging a violation of the West Virginia Wage Payment and Collection Act[1] and employment discrimination based on age and/or sex.[2] The circuit court granted Wilson summary judgment on the wage payment and collection count. The remaining employment discrimination claim is pending before the circuit court and is the subject of this dispute.
Wilson served interrogatories and requests for production on Westbrook. She served subpoenas duces tecum on Stewart Phillips, her direct supervisor who serves as Developmental Disabilities Director for Westbrook, and Frances Murphy, secretary to the Executive Director of Westbrook. Wilson requested that Murphy furnish any document which gave or offered severance payment during the previous four years; any document offering employment, including alternative employment, during the previous five years; any document which mentioned Wilson; and Murphy's office calendars for the previous four years. The list of documents requested from Phillips is more extensive and includes severance pay descriptions, employee layoff explanations, job descriptions, minutes of staff meetings, budgets and financial statements, time sheets, job descriptions of positions which have been filled since April 6, 2000, and any document concerning Wilson. Due to privacy concerns, Westbrook objected to the production of documents which may contain confidential client and/or employee information.
Murphy was deposed on September 12, 2000; during her deposition, she stated that counsel for Westbrook was not her personal *649 attorney. Phillips was deposed on September 14, 2000; during his deposition, counsel for Westbrook stated he did not represent Phillips personally but that "[Phillips] is a part of Westbrook Health Services, and so any communications between him, as management, and us, as counsel for Westbrook Health Services, is privileged." Wilson claims that counsel for Westbrook instructed Phillips not to answer a question alleging attorney-client privilege.[3] Westbrook simply states that the corporation's employees were not instructed by counsel to refrain from answering questions that contained "clearly discoverable factual information." Westbrook contends the attorney-client privilege pertains to conversations regarding Westbrook's defense which took place between the witnesses and counsel for Westbrook.
On November 14, 2000, Wilson filed a motion to compel more complete discovery, motion to compel testimony, motion to compel production of documents, and motion for sanctions against Westbrook's counsel for instructing witnesses not to answer questions and for failing to produce the requested documents. After holding a hearing, the court granted the motions but allowed Westbrook to redact the names of clients[4] from documents which must be produced. Reasonable attorney fees and costs expended to obtain the order were granted. Westbrook now asks this Court to prohibit the respondent judge from enforcing the order.

II.

DISCUSSION
Westbrook contends the attorney-client privilege attaches to communications between Phillips and Westbrook's counsel because Phillips is a managerial employee who directly supervised Wilson and to conversations concerning the defense of Westbrook which took place between Murphy and Westbrook's counsel. Westbrook alleges that privacy rights attach to employee and/or employment information;[5] the objections to providing such information were valid and, therefore, cannot be the basis for sanctions. Westbrook maintains the respondent judge exceeded his legitimate powers (1) by finding that no attorney-client privilege attaches to conversations between Westbrook's counsel and managerial and supervisory employees; (2) by finding that no attorney-client privilege attaches to conversations between Westbrook's counsel and non-managerial employees; (3) by finding that no privacy rights attach to employee and/or employment information which may contain information that an employee or former employee expects will remain private; and (4) by awarding sanctions and/or attorney fees to Wilson based upon these erroneous findings.
Wilson contends the information she sought in the interrogatories is absolutely relevant to proving her claim. She maintains the information must, therefore, be provided. She also maintains that no attorney-client privilege exists between Westbrook's counsel and Westbrook's employees. We limited our review of this case to the issues of attorney-client privilege and the confidentiality of tax information regarding other employees of Westbrook. We believe that no attorney-client privilege exists between the employees of Westbrook and Westbrook's attorneys because the test established in State v. Burton, 163 W.Va. 40, 254 S.E.2d 129 (1979), and more recently reiterated in State ex rel. United Hosp. v. Bedell, 199 W.Va. 316, 484 S.E.2d 199 (1997), is not met. Furthermore, information concerning other employees is private and must be obtained by protective order.
It is well established that "`"[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds *650 its legitimate powers. W.Va.Code, 53-1-1." Syl. pt. 2, State ex rel. Peacher v. Sencindiver, 160 W.Va. 314, 233 S.E.2d 425 (1977).' Syl. pt. 2, State ex rel. Kees v. Sanders, 192 W.Va. 602, 453 S.E.2d 436 (1994)." Syllabus Point 1, State ex rel. United Hosp. v. Bedell, 199 W.Va. 316, 484 S.E.2d 199 (1997). In other words, Westbrook's "right to the extraordinary remedy of prohibition must clearly appear before it is entitled to such remedy." Id., 199 W.Va. at 324, 484 S.E.2d at 207. Clearly, "` "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syllabus Point 1, State Farm Mutual Automobile Insurance Co. v. Stephens, 188 W.Va. 622, 425 S.E.2d 577 (1992).' Syllabus Point 3, State ex rel. McCormick v. Zakaib, 189 W.Va. 258, 430 S.E.2d 316 (1993)." Syllabus Point 2, State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677 (1995).
"The scope of discovery in civil cases is broad; however, privileged material is not subject to discovery." State ex rel. Shroades v. Henry, 187 W.Va. 723, 725, 421 S.E.2d 264, 266 (1992). Moreover, "[t]he attorney-client privilege is a common law privilege that protects communications between a client and an attorney during consultations." State ex rel. John Doe v. Troisi, 194 W.Va. 28, 35-36, 459 S.E.2d 139, 146-47 (1995) (citations omitted). This means that "[c]ommunications made in confidence either by an attorney or a client to one another are protected by the privilege." Canady, 194 W.Va. at 441, 460 S.E.2d at 687 (footnote omitted). Stated another way, the attorney-client privilege "is intended to ensure that a client remains free from apprehension that consultations with a legal advisor will be disclosed." Id., 194 W.Va. at 438, 460 S.E.2d at 684. However, before the attorney-client privilege applies to limit discovery, one must meet three minimum requirements.
These requirements are set forth in Syllabus Point 6 of State ex rel. United Hosp. v. Bedell, 199 W.Va. 316, 484 S.E.2d 199 (1997):
"`In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal advisor; (3) the communication between the attorney and client must be [intended] to be confidential.' Syllabus Point 2, State v. Burton, 163 W.Va. 40, 254 S.E.2d 129 (1979)." Syl. pt. 7, State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677 (1995).
In the case sub judice, Westbrook cannot demonstrate that these three requirements have been met. During her deposition, Murphy specifically admitted that Westbrook's attorneys were not her attorneys. During Phillips' deposition, Wilson's attorney asked Mr. Kent, Westbrook's attorney, if he represented Phillips. Mr. Kent specifically answered, "No, we don't represent him personally[.]" Furthermore, Westbrook did not attempt to develop a line of questioning to show that either deponent ever sought advice from Westbrook's attorneys in their capacity as legal advisors.
Rather, during Phillips' deposition, counsel instructed him not to answer questions regarding "[a]nything we have talked about... because I would instruct you not to answer that because that is privileged." The basis offered for this objection was that Phillips is "part of management of Westbrook Health Services[.]" During Murphy's deposition, when asked if she employed Westbrook's attorney, counsel intervened by concluding that "[s]he is Westbrook for purposes of the deposition."
"`The burden of establishing the attorney-client privilege or the work product exception, in all their elements, always rests upon the person asserting it.' Syl. pt. 4, State ex rel. USF & G v. Canady, 194 W.Va. 431, 460 S.E.2d 677 (1995)." Syllabus Point 3, State ex rel. United Hosp. v. Bedell, 199 W.Va. 316, 484 S.E.2d 199 (1997). In Bedell, Mrs. Becker, a patient, suffered injuries when she fell from a cart in petitioner's hospital. Following a long hospitalization, Mrs. Becker died one year later in a nursing home. Immediately following the incident, Nurse Lemasters prepared an incident report. *651 The hospital's risk manager and general counsel completed an investigation report. The administratrix of Mrs. Becker's estate sought to discover both documents. The hospital refused to produce them citing attorney-client privilege and the work product doctrine. The circuit court ordered disclosure of the incident report and found the investigation report was factual in nature and, therefore, not protected. The hospital sought to prohibit enforcement of the court's orders.
This Court stated that the burden rested upon the hospital to demonstrate attorney-client privilege and the work product doctrine. The Bedell Court concluded that neither the incident report nor the investigation report met the elements required to successfully assert the attorney-client privilege by stating:
Specifically, the hospital has not demonstrated that Nurse Lemasters contemplated that an attorney-client relationship did or will exist between her and Mr. Bray when she prepared and then handed over the incident report to him. The hospital further failed to establish that Nurse Lemasters sought any legal advice from Mr. Bray with regard to the report. Furthermore, the hospital has failed to articulate a clear argument as to how the elements of the attorney-client privilege have been met with regard to the investigation report. As a result, the hospital has failed to carry its burden of establishing the attorney-client privilege, in all its elements, with regard to either the incident or investigation report.
Bedell, 199 W.Va. at 326, 484 S.E.2d at 209 (citations and footnote omitted).[6]
The same is true in this case. As mere employees of the company, Westbrook has not established that Murphy or Phillips contemplated that an attorney-client relationship did or will exist between them and Westbrook's attorneys. Both deponents answered that Westbrook's attorneys did not represent them in a legal capacity. The deponents simply are not the company for purposes of taking depositions just because Westbrook's attorneys say they are. Westbrook further failed to establish that either deponent sought any legal advise from Westbrook's attorneys. Under these circumstances, we cannot say the circuit court abused its discretion by finding that no attorney-client privilege exists between Murphy or Phillips and Westbrook's counsel.
Claiming concerns of invasion of privacy, Westbrook refused to answer numerous interrogatories which sought personnel information about employees or former employees of Westbrook. Westbrook's counsel then objected to the production of this information during the October 30, 2000 hearing. Counsel specifically stated, "And all the way along, and I told [Wilson's attorney] in the very beginning that we just need a court order for our protection." The judge answered, "Well, you would be protected in this court. I don't know about any other, but anybody that would sue you on that grounds would be thrown out of court, and I think it would be a frivolous lawsuit." Even after this discussion took place, Westbrook's counsel failed to seek a protective order. Instead of seeking a protective order or producing the requested information, counsel asked this Court to prohibit discovery of the documents.
Protective orders are often used to protect the privacy rights of nonlitigants and are granted pursuant to West Virginia Rule of Civil Procedure 26(c), which states:
(c) Protective orders.Upon motion by a party or by the person from whom discovery is sought, including a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the circuit where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, *652 embarrassment, oppression, or undue burden or expense, including one or more of the following:
(1) That the discovery not be had;
(2) That the discovery may be had only on specified terms and conditions, including a designation of the time and place;
(3) That the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;
(4) That certain matters not be inquired into or that the scope of the discovery be limited to certain matters;
(5) That discovery be conducted with no one present except persons designated by the court;
(6) That a deposition after being sealed be opened only by order of the court;
(7) That a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way;
(8) That the parties simultaneously file specified documents or information enclosed in sealed envelopes to be open as directed by the court.
If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.
In State ex rel. W.Va. Fire & Cas. v. Karl, 202 W.Va. 471, 505 S.E.2d 210 (1998) (per curiam), the insurance company sought to prevent the release of claim files in infant settlement cases which were resolved without court approval. The insurance company claimed that disclosure of such documentation would violate the privacy rights of nonlitigant third parties and could subject the company to liability for violation of privacy rights. The circuit court ordered production of the claim files but issued a protective order to preserve the interests of nonlitigants. Fire and Casualty filed a writ of prohibition attempting to prevent production. This Court acknowledged that the privacy rights of nonlitigant third parties are important and concluded that the privacy interests of the nonlitigant infants could be protected "by redacting the names, addresses, personal medical information, and other identifying material from the records." Id., 202 W.Va. at 476, 505 S.E.2d at 215. Upon completion of redaction, the infant claim portions of the requested files were ordered to be produced.
Perhaps this or a similar procedure can be followed to protect Westbrook from violating the privacy rights of nonlitigant employees or former employees regarding employment records and tax information. In its supplemental brief submitted to this Court, Westbrook states, "Petitioner was never trying to keep relevant information from Respondent Wilson, Petitioner simply wanted to have protection from potential lawsuits by employees and/or former employees, who may have a claim that their individual right of privacy was violated." Westbrook later goes on to state that "[t]he point cannot be made too strongly that Petitioner was never attempting to keep this information completely from Respondent Wilson, but only wanted an order protecting them from future liability for the disclosure." Westbrook also conceded during oral argument before this Court that the documents were likely producible.
Westbrook must now protect itself from possible claims of invasion of privacy by seeking a protective order. When a litigant seeks personal and/or personnel information concerning nonlitigant employees or former employees from the litigant's former employer, production of the requested information may invade the nonlitigant employees' or former employees' right to privacy. In this instance, the employer's remedy is to seek a protective order pursuant to West Virginia Rule of Civil Procedure 26(c).
For the foregoing reasons, the writ of prohibition is denied.
Writ denied.
Justice ALBRIGHT, deeming himself disqualified, did not participate in the decision of this case.
Judge JOHN S. HRKO, sitting by temporary assignment.
NOTES
[1] The West Virginia Wage Payment and Collection Act is located at W.Va.Code §§ 21-5-1 to 18.
[2] The West Virginia Human Rights Act is located at W.Va.Code §§ 5-11-1 to 20.
[3] Phillips was asked, "What did you do to prepare for your deposition today?" The attorney, Mr. Kent, responded, "Other than speaking with us. Anything we have talked about, or Ed and I, you know, whoever at my office, because I would instruct you not to answer that because that is privileged." (Emphasis added).
[4] The order says nothing about protecting the privacy of employees or former employees.
[5] Westbrook is referring to salary information, date of birth, addresses, telephone numbers, and tax and contribution information.
[6] This Court found the incident report was not protected from discovery under the work product doctrine because it was prepared in the ordinary course of the hospital's business. The investigation report constituted work product, but this Court found the hospital waived that protection by designating its general counsel to testify regarding this matter.