# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**January 2016 Term**

_____

**No. 15-1101**

_____

**FILED**
**March 8, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA EX REL. STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY,**

**Petitioner**

**v.**

**THE HONORABLE JEFFREY D. CRAMER,
JUDGE OF THE CIRCUIT COURT OF WETZEL COUNTY,
WILLIAM BASSETT AND SARAH BASSETT,**

**Respondents**

_____

**ORIGINAL PROCEEDING IN PROHIBITION**

**WRIT GRANTED AS MOULDED**

_____

**Submitted: March 2, 2016
Filed: March 8, 2016**

R. Carter Elkins, Esq.
Laura L. Gray, Esq.
Elkins Ray, PLLC
Huntington, West Virginia
Counsel for the Petitioner, State Farm
Mutual Automobile Insurance Company

Brent K. Kesner, Esq.
Ernest G. Hentschel, Esq.
Kesner & Kesner, PLLC
Charleston, West Virginia
Gregory A. Gellner, Esq.
Gellner Law Offices
Wheeling, West Virginia
Counsel for Respondents
William Bassett and Sarah Bassett

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court**.

**SYLLABUS BY THE COURT**

1. "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992).

2. "Under *W.Va. Code*, 33-6-31d [1993] a knowing and intelligent rejection of optional uninsured and underinsured motorists coverages by any named insured under an insurance policy creates a presumption that all named insureds under the policy received an effective offer of the optional coverages and that such person exercised a knowing and intelligent rejection of such offer. The named insured's rejection is binding on all persons insured under the policy." Syl. pt. 13, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995).

3. "The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried." Syl. pt. 4, in part, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992).

**Chief Justice Ketchum**:

This is an original proceeding in prohibition filed by State Farm Mutual Automobile Insurance Company ("State Farm"). State Farm is a defendant in an action filed by William and Sarah Bassett (collectively "Bassett") in the Circuit Court of Wetzel County. Bassett, insured by State Farm, alleged that State Farm engaged in unfair trade practices with regard to Bassett's claim of uninsured motorist coverage following a motor vehicle accident. Bassett's assertion of unfair trade practices emanates from State Farm's alleged failure to effectively offer optional (additional) uninsured coverage as required by law. According to Bassett, State Farm's misconduct constituted a general business practice.

The issue before this Court concerns discovery. The circuit court granted Bassett's motion to compel answers to three interrogatories and, later, on October 29, 2015, denied State Farm's motion to reconsider. The interrogatories sought information concerning State Farm's offers of uninsured coverage and handling of uninsured motorist claims in relation thereto. In particular, the interrogatories asked for the names, addresses and telephone numbers of State Farm insureds in West Virginia who may have experienced difficulties regarding their uninsured motorist coverage. Bassett asserts that those insureds, non-parties in this action, are potential fact witnesses through which Bassett can establish a general business practice of State Farm and violations of law.

1

State Farm asks this Court to prohibit enforcement of the October 29, 2015, order and the previous order granting Bassett's motion to compel. State Farm asserts that the motion to compel should have been denied because, in spite of an agreed protective order in place, the effect of the ruling would permit Bassett to contact over 400 non-party State Farm policyholders without their prior consent, thereby violating the policyholders' right to privacy. State Farm asks this Court to direct that the motion to compel answers to the three interrogatories be denied. In the alternative, State Farm asks this Court to redact the non-party insureds' identifying information or preclude Bassett from contacting the non-party insureds without their prior consent.

This Court is of the opinion that State Farm is entitled to relief, as moulded, prohibiting enforcement of the order granting Bassett's motion to compel and the October 29, 2015, order denying State Farm's motion to reconsider. The circuit court committed error by failing to bar the disclosure of the names, addresses and telephone numbers of State Farm's other insureds. The names, addresses, telephone numbers, and any information of a personal nature concerning State Farm's other West Virginia insureds shall be redacted from State Farm's answers to the three interrogatories and redacted from any documents provided to support those answers.

2

## I. The Underlying Action

On March 14, 2013, Bassett filed a complaint in the Circuit Court of Wetzel County against Brian Wade ("Wade") and State Farm. Bassett alleged that on December 3, 2011, he was driving to work in a Chevrolet pick-up truck owned by his parents. According to Bassett, while driving north on Route 20, a motor vehicle driven by Wade in the opposite direction suddenly crossed the center line at a high rate of speed resulting in a head-on collision. Bassett alleged that Wade was operating a motor vehicle Wade had stolen the night before. As a result of the collision, Bassett sustained serious injuries, was hospitalized, and underwent multiple surgeries. Bassett's complaint included a demand for compensatory and punitive damages.

At the time of the collision, Bassett and his wife were insured under three policies issued by State Farm. Each policy included the mandatory $20,000 per person, $40,000 per accident, uninsured motorist coverage.[1] Since Wade was an uninsured motorist, Bassett was entitled to collect uninsured benefits from State Farm. State Farm paid the $20,000 per

---

[1] Pursuant to West Virginia's financial responsibility statute, *W.Va. Code*, 17D-4-2 [1979], the minimum coverage for uninsured motorist protection to be included in a motor vehicle policy issued in this State is $20,000 "because of bodily injury to or death of one person in any one accident," and $40,000 "because of bodily injury to or death of two or more persons in any one accident." The amount for property damage under the statute is $10,000.

person limit in uninsured benefits on each of the three policies, *i.e.*, $60,000. Bassett alleged that his damages greatly exceed that amount.

Seeking additional uninsured benefits, Bassett also demanded relief in the form of declaratory judgment. Bassett alleged that, by operation of law, the amount of uninsured coverage available to him resulting from the collision was at least $100,000/$300,000 as to each of the three policies. Bassett based his claim on his assertion that State Farm never properly offered the additional uninsured coverage, as State Farm was required to do pursuant to *W.Va. Code*, 33-6-31(b) [1998].[2]

---

[2] *W.Va. Code*, 33-6-31(b) [1998], states in relevant part:

> Provided, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle up to an amount of one hundred thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, in the amount of three hundred thousand dollars because of bodily injury to or death of two or more persons in any one accident and in the amount of fifty thousand dollars because of injury to or destruction of property of others in any one accident; Provided, however, That such endorsement or provisions may exclude the first three hundred dollars of property damage resulting from the negligence of an uninsured motorist: Provided further, That such policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he shall legally be entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without setoff against the insured's policy or any other policy.

In March 2015, Bassett filed an amended complaint which alleged a cause of action against State Farm for unfair trade practices. Bassett alleged that State Farm failed to make a commercially reasonable offer of uninsured motorist coverage by failing to use the proper form for offering optional (additional) coverage under *W.Va. Code*, 33-6-31d [1993].[3] His claim of unfair trade practices emanated from the statutory unfair claim settlement practices listed in *W.Va. Code*, 33-11-4(9) [2002].[4]

## II. Proceedings During Discovery

During the discovery process, State Farm reformed the three policies to provide uninsured motorist coverage equal to the liability coverage limits of each policy and paid

---

[3] *W.Va. Code*, 33-6-31d [1993], states in part:

(a) Optional limits of uninsured motor vehicle coverage and underinsured motor vehicle coverage required by section thirty-one [*W.Va. Code*, 33-6-31] of this article shall be made available to the named insured at the time of initial application for liability coverage and upon any request of the named insured on a form prepared and made available by the Insurance Commissioner.

[4] A number of unfair claim settlement practices are listed in subparts (a) through (o) of *W.Va. Code*, 33-11-4(9) [2002], each relating to a "general business practice" within the insurance industry. For example, *W.Va. Code*, 33-11-4(9)(a) [2002], states:

No person shall commit or perform with such frequency as to indicate a general business practice any of the following:
(a) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue.

*See also West Virginia Code of State Rules* § 114-14-1 (2006), *et seq.*, (addressing unfair trade practices in the insurance industry).

5

Bassett additional uninsured motorist benefits in the amount of $240,000.[5] Thus, according to Bassett, the requested declaratory judgment (a breach of contract claim) concerning the amount of uninsured motorist coverage available is no longer an issue since Bassett prevailed in that regard.

The focus of the litigation, therefore, became Bassett's claim that State Farm had engaged in unfair claim settlement practices. Interrogatories 3, 4 and 5 of Bassett's Third Set of Interrogatories to State Farm were sharply contested. Those Interrogatories sought information regarding offers of uninsured motorist coverage to other State Farm insureds:

> 3. Identify by name, address and telephone number every State Farm insured in the State of West Virginia, from 2005 to the present, who was injured by or suffered property damage as a result of the acts of an uninsured motorist and whose policy did not have uninsured motorists coverage limits at least equal to the liability limits stated in the insured's policy declarations [or] $100,000, whichever is greater. You may exclude from this response all insureds who obtained a judgment against the uninsured tortfeasor for less than the stated uninsured motorists coverage limits afforded by the State Farm policy or who settled his/her claim for uninsured motorists benefits for less than the stated uninsured motorists coverage limits afforded by the State Farm policy.

> 4. Identify the State Farm insured named in response to Interrogatory No. 3 who received payment under a State Farm policy for uninsured motorists

---

[5] According to State Farm's petition filed in this Court, it also paid Bassett $102,578 for aggravation, inconvenience and attorney fees. That amount, plus the $60,000 and the $240,000 in uninsured motorist benefits, equals a total payment to Bassett in the amount of $402,578.

benefits where the "Uninsured Motorist Coverage Offer" form listed more than a single premium for each optional level of uninsured motorists coverage.

5. Identify every claim in the State of West Virginia from 2005 to the present where State Farm has "rolled-up" or reformed an insured's stated limits of uninsured motorists coverage to an amount equal to the insured's liability coverage limits or $100,000, whichever is greater, indicating the claim number, the name, address and telephone number of the insured, and the reason or reasons the policy was reformed.

In its answer to the Third Set of Interrogatories, State Farm objected to Interrogatories 3, 4 and 5 on several grounds: (1) The Interrogatories were overly broad and burdensome; (2) they sought information for certification of a class action which had not been mentioned in the amended complaint; and (3) the Interrogatories sought information "the discovery of which would violate the privacy and confidentiality interests of State Farm Mutual Automobile Insurance Company insureds."[6]

In May 2015, the circuit court entered the parties' agreed protective order which stated that documents provided by State Farm in response to discovery requests would be considered confidential and would not be filed with the circuit court unless under seal. The

---

[6] State Farm's answer to Bassett's Third Set of Interrogatories included a list of first-party lawsuits filed against State Farm in West Virginia from January 1, 2010, through March 18, 2015, which contained allegations of bad faith and/or unfair trade practices. The list, consisting of approximately 200 cases, identified the style of each action, the docket number, and the circuit court. The information was provided in answer to Interrogatory No. 6 of Bassett's Third Set of Interrogatories.

7

agreed protective order did not specifically address Interrogatories 3, 4 and 5 of Bassett's Third Set of Interrogatories.

On July 7, 2015, Bassett filed a motion to compel complete answers to Interrogatories 3, 4 and 5 of the Third Set of Interrogatories. Bassett stated that his claims were based on State Farm's failure to use the proper form for offering optional (additional) coverage promulgated by the West Virginia Insurance Commissioner. Bassett asserted that, to show unfair claim settlement practices, he was entitled to discover the type of selection/rejection offering form for added coverage State Farm had used with other insureds, and whether, with or without litigation, State Farm had paid additional coverage where the form was clearly defective. According to Bassett, that information would also support his claim for punitive damages by establishing how often State Farm engaged in misconduct.

The circuit court granted the motion to compel and directed State Farm to disclose the information requested in Interrogatories 3, 4 and 5. The circuit court concluded that the information sought was relevant to Bassett's allegation of unfair claim settlement practices and his claim for punitive damages. The order, entered on October 5, 2015, allowed State Farm to disclose the information pursuant to the agreed protective order.

State Farm filed a motion to reconsider alleging that it had identified over 400 non-party insureds who have no interest in this litigation and whose privacy rights are not protected by the order granting Bassett's motion to compel. State Farm asserted, in the alternative, that the May 2015 agreed protective order is inadequate and that a new protective order should be entered (1) to prevent disclosure of (or redact) the names, addresses and telephone numbers of the non-party insureds and (2) if such information is filed in the circuit court, to prevent Bassett from contacting the non-party insureds without their advance consent.

On October 29, 2015, the circuit court entered an order denying State Farm's motion to reconsider the ruling granting Bassett's motion to compel. With regard to State Farm's request for a new protective order, the circuit court stated:

> The names, addresses and telephone numbers of non-parties disclosed by [State Farm] shall not be disclosed outside the context of the present litigation without further order of the Court.
>
> Further, while the Court declines at this time to prohibit [Bassett] from contacting non-party individuals, said contact shall be performed in a manner designed to cause the least possible intrusion to the lives of said individuals. Should the Court receive complaints regarding the nature of said contact, the same may be suspended by Order of the Court without further notice or hearing.

Thereafter, State Farm filed this proceeding seeking to prohibit the enforcement of the October 29, 2015, order and the previous order granting Bassett's motion to compel. State

9

Farm asks this Court to direct that the motion to compel be denied. In the alternative, State Farm asks this Court to redact the non-party insureds' identifying information or preclude Bassett from contacting the non-party insureds without their advance consent.

### III. Standards for Relief in Prohibition

This Court has original jurisdiction in prohibition cases pursuant to art. VIII, § 3, of the *Constitution of West Virginia*. In considering whether to grant relief in prohibition, this Court stated in the syllabus point of *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925), as follows: "The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction." *Accord* syl. pt. 1, *State ex rel. Progressive Classic Ins. Co. v. Bedell*, 224 W.Va. 453, 686 S.E.2d 593 (2009).

Here, State Farm contends that the circuit court is proceeding in excess of its jurisdiction. Accordingly the relevant guidelines are found in *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996). Syllabus point 4 of *Hoover* states:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether

10

the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

*Accord* syl. pt. 2, *State ex rel. West Virginia Nat'l Auto Ins. Co. v. Bedell*, 223 W.Va. 222, 672 S.E.2d 358 (2008).

Finally, we note that, although a writ of prohibition is rarely granted as a means to resolve discovery disputes, *State ex rel. Arrow Concrete Co. v. Hill*, 194 W.Va. 239, 244, 460 S.E.2d 54, 59 (1995), relief in prohibition is appropriate in certain cases. In *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992), this Court held in syllabus point 1: "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." *Accord* syl. pt. 2, *State ex rel. Westbrook Health Serv., Inc. v. Hill*, 209 W.Va. 668, 550 S.E.2d 646 (2001); syl. pt. 2, *State ex rel. U. S. F. & G. Co. v. Canady*, 194 W.Va. 431, 460 S.E.2d 677 (1995).

## IV. Discussion

State Farm contends that the circuit court erred by granting Bassett's motion to compel complete answers to Interrogatories 3, 4 and 5. In the alternative, State Farm contends that the circuit court should have prevented the disclosure of, or ordered redaction of, the names, addresses and telephone numbers of the non-party insureds. Finally, State Farm asserts that,

11

if such identifying information is filed, Bassett should be prevented from contacting the non-party insureds without their advance consent.

Insofar as State Farm paid Bassett additional uninsured motorist coverage on each of the three policies applicable to the accident, the amount of coverage to which Bassett is entitled is no longer an issue. Nevertheless, Bassett's amended complaint also alleged unfair claim settlement practices. According to Bassett, complete answers to Interrogatories 3, 4 and 5, including the names, addresses and telephone numbers of State Farm's non-party insureds, are necessary to establish the "general business practice" required under *W.Va. Code*, 33-11-4(9) [2002], as an element of unfair claim settlement practices. Specifically, alleging that State Farm routinely failed to present commercially reasonable options of additional uninsured motorist coverage to its policyholders, Bassett contends that he is entitled to discover the type of selection/rejection form for additional coverage State Farm had used with other insureds, and whether, with or without litigation and how often, State Farm had paid additional coverage where the selection/rejection form was clearly defective. In his responsive brief filed in this Court, Bassett states:

> The Bassetts' claims against State Farm in this case are based on the fact that the UM selection/rejection forms used by State Farm to offer the coverage at issue here are materially different from the Commissioner's mandatory, prescribed form.

12

In syllabus point 1 of *Bias v. Nationwide Mut. Ins. Co.*, 179 W.Va. 125, 365 S.E.2d 789 (1987), this Court held: "Where an offer of optional coverage is required by statute, the insurer has the burden of proving that an effective offer was made, and that any rejection of said offer by the insured was knowing and informed."

After the decision in *Bias*, the West Virginia Legislature enacted *W.Va. Code*, 33-6-31d [1993], which authorizes a form, prepared and made available by the West Virginia Insurance Commissioner, regarding optional limits of uninsured and underinsured motor vehicle coverage. *See* n. 3, *supra*. The statute further provides that the signing of the form by an applicant "shall create a presumption" that the applicant received an effective offer of the optional coverages "and that such applicant exercised a knowing and intelligent election or rejection, as the case may be, of such offer as specified in the form." Accordingly, syllabus point 13 of *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995), holds:

> Under *W.Va. Code*, 33-6-31d [1993] a knowing and intelligent rejection of optional uninsured and underinsured motorists coverages by any named insured under an insurance policy creates a presumption that all named insureds under the policy received an effective offer of the optional coverages and that such person exercised a knowing and intelligent rejection of such offer. The named insured's rejection is binding on all persons insured under the policy.

*Accord* syl. pt. 1, *Burrows v. Nationwide Mut. Ins. Co.*, 215 W.Va. 668, 600 S.E.2d 565 (2004). *See Martin v. State Farm Mut. Auto. Ins. Co.*, 809 F.Supp.2d 496, 504 (S.D. W.Va. 2011) (indicating that the presumption is tied to the form, notwithstanding clarifying discussions with an insurance agent).

An insurance company's failure to use the Insurance Commissioner's prescribed form "results in the loss of the statutory presumption" of an effective offer of optional coverages. Syl. pt. 1, in part, *Thomas v. McDermitt*, 232 W.Va. 159, 751 S.E.2d 264 (2013). In *Thomas*, the selection/rejection form used by the insurer, State Farm, varied from the Commissioner's form by adding elements that were arguably "difficult to understand and more complicated than necessary." 232 W.Va. at 162, 751 S.E.2d at 267. This Court concluded, in *Thomas*, that State Farm, therefore, did not have the benefit of the statutory presumption. As a result, we noted, in *Thomas*, that State Farm's assertion that its offer was commercially reasonable and knowingly rejected would ultimately be evaluated under the common law standards enunciated in *Bias* "after thorough discovery opportunities by the parties." 232 W.Va. at 173, 751 S.E.2d at 278.[7]

---

[7] This Court noted in *Thomas* that, following the enactment of *W.Va. Code*, 33-6-31d [1993], the Insurance Commissioner issued two Informational Letters, no. 88 and no. 121, which included sample forms and instructions. 232 W.Va. at 164-65, 751 S.E.2d at 269-70. We made clear in *Thomas* that an insurer must use the Commissioner's form in order to gain the benefit of the statutory presumption that its offer of uninsured/underinsured coverage was effective, and that the insured's rejection of such coverage was knowing and intelligent. 232 W.Va. at 165, 751 S.E.2d at 270.

14

In the current matter, Interrogatories 3, 4 and 5 pertain to the nature and effectiveness of the form used by State Farm to offer additional uninsured motorist coverage to the non-party insureds. However, the form given to those policyholders is not included in the record before this Court. We cannot assume that the form used by State Farm herein is the same as the one addressed in *Thomas*.

Nevertheless, it is undisputed that the form given by State Farm to the non-party insureds, and to Bassett, differed from the Insurance Commissioner's prescribed form. To establish a general business practice, as well as a loss of the statutory presumption, Bassett argues that he is entitled to discover the type of selection/rejection form State Farm gave to the non-party insureds. His cause of action for unfair claim settlement practices is expressly based on the fact that State Farm's selection/rejection form for additional uninsured coverage is materially different from the Commissioner's prescribed form.[8] Derivative thereof, is Bassett's request for information concerning whether, with or without litigation and how frequently, State Farm paid additional coverage where the form State Farm used was clearly defective.

---

[8] Bassett's amended complaint alleged: "Defendant State Farm failed and refused to comply with the directives of the West Virginia Insurance Commissioner and, in fact, used a form that is confusing, and materially different than that required by the West Virginia Insurance Commissioner[.]"

15

In *State ex rel. W.Va. Fire & Cas. Co. v. Karl*, 202 W.Va. 471, 505 S.E.2d 210 (1998), the plaintiffs alleged the tort of outrage, fraud and unfair claim settlement practices against West Virginia Fire & Casualty Company ("Fire and Casualty") in an action involving a child who suffered a brain injury. During discovery, the circuit court ordered Fire and Casualty to produce certain claim files in infant settlement cases. Balancing the privacy rights of the unrelated non-litigants against the discovery interests of the plaintiffs, this Court, in *Karl*, granted Fire and Casualty relief in prohibition. Although a protective order had been entered in the circuit court which expressed the need to protect the confidentiality of the non-litigants' medical records, this Court held that portions of the files to be produced should, nevertheless, be redacted. This Court's opinion in *Karl* concluded:

> Fire and Casualty should be required to produce redacted copies of the infant claim portions of the requested claims files. Fire and Casualty may adequately protect the privacy interests of the non-litigants by redacting the names, addresses, personal medical information, and other identifying material from the records. * * *
>
> Subsequent to production, if any party seeks additional information or testimony which would necessitate release of any non-litigant's name or personal information, that party can petition the lower court for the production of such information. * * *
>
> In the present posture of the case, however, redaction protects the privacy interests of the non-litigants while also affording the plaintiffs adequate discovery privileges.

202 W.Va. at 476, 505 S.E.2d at 215.

16

Pursuant to Rule 26(b)(1) of the *West Virginia Rules of Civil Procedure*, discovery is not limited only to admissible evidence but applies to information reasonably calculated to lead to the discovery of admissible evidence. Nevertheless, syllabus point 4, in part, of *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992), observes: "The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried." *Accord* syl. pt. 5, *State ex rel. Montpelier U.S. Ins. Co. v. Bloom*, 233 W.Va. 258, 757 S.E.2d 788 (2014).

Here, Interrogatories 3, 4 and 5 primarily concern the form used by State Farm to offer uninsured motorist coverage and State Farm's handling of uninsured motorist claims in relation thereto. Bassett clearly states in his responsive brief that the basis of his claim is that State Farm's uninsured selection/rejection form is materially different from the Insurance Commissioner's prescribed form. The information sought by Interrogatories 3, 4 and 5 can be provided by disclosing the form State Farm used with regard to the non-party insureds. That information directly relates to the "general business practice" component of Bassett's cause of action for unfair claim settlement practices under *W.Va. Code*, 33-11-4(9) [2002]. Additional information in answer to Interrogatories 3, 4 and 5, related to "general business practice," can be provided by State Farm by disclosing, numerically, when and how often State Farm paid additional coverage in connection with the form it used. The Interrogatories

17

are limited to a specific time-frame and geographic area and are not burdensome. However, the disclosure of the names, addresses and telephone numbers of the non-party insureds is unwarranted in the context of Bassett's assertion of unfair claim settlement practices.[9]

Finally, Bassett asserts that the disclosure of the names, addresses and telephone numbers of State Farm's non-party insureds would support his demand for punitive damages by establishing how often State Farm engaged in unfair claim settlement practices. *See* syl. pt. 3, *Garnes v. Fleming Landfill, Inc.*, 186 W.Va. 656, 413 S.E.2d 897 (1991) (How often the defendant engaged in similar conduct in the past is one of the factors to be considered in awarding punitive damages.). Comparable to his allegation of unfair claim settlement practices, Bassett's demand for punitive damages is grounded on the type of selection/rejection form for additional coverage used by State Farm and State Farm's handling of claims in relation thereto.

---

[9] The May 2015 agreed protective order did not specifically address Interrogatories 3, 4 and 5 and established no parameters governing Bassett's intended contacts with the non-party insureds, estimated to be over 400 individuals. Moreover, although the order of October 29, 2015, indicated that, in the event of an intrusive contact, any non-party insured could notify the circuit court, no mechanism was provided to inform non-party insureds residing in Wetzel County or in other counties of that remedy. The non-party insureds have not consented to the release of their names, addresses and telephone numbers.

Although Bassett's demand for punitive damages remains viable, this Court concludes, as we have with respect to his allegation of unfair claim settlement practices, that the names, addresses and telephone numbers of State Farm's other policyholders are not discoverable. We reach that conclusion in view of (1) the disclosure of the form State Farm used with regard to its non-party insureds; (2) the disclosure, quantitatively, of when and how often State Farm paid additional coverage; (3) State Farm's disclosure of the first-party lawsuits filed against State Farm which contained allegations of bad faith and/or unfair trade practices; and (4) the inadequacy to safeguard against intrusive contacts of both the May 2015 agreed protective order and the October 29, 2015, order which denied State Farm's motion to reconsider.

Under the current posture of this action, the names, addresses and telephone numbers of the non-party insureds shall be redacted from State Farm's answers to Interrogatories 3, 4 and 5 and redacted from any documents provided to support those answers.

## V. Conclusion

This Court is of the opinion that State Farm is entitled to relief, as moulded, prohibiting enforcement of the order granting Bassett's motion to compel and the October 29, 2015, order denying State Farm's motion to reconsider. The circuit court committed error by failing to bar the disclosure of the names, addresses and telephone numbers of State

19

Farm's other insureds. The circuit court's error in that regard cannot be corrected on appeal. The names, addresses, telephone numbers, and any information of a personal nature concerning State Farm's other West Virginia insureds shall be redacted from State Farm's answers to Interrogatories 3, 4 and 5 and redacted from any documents provided to support those answers.

                                                      Writ Granted as Moulded.