IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2021 Term

_____

No. 20-1029

_____

FILED
**June 15, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. HEALTH CARE ALLIANCE, INC.
AND HCFS HEALTH CARE FINANCIAL SERVICES, LLC D/B/A ALCOA
BILLING CENTER,
Petitioners

v.

THE HONORABLE ERIC O'BRIANT, JUDGE OF THE CIRCUIT COURT OF
LOGAN COUNTY, AND KELSEY STARR,
Respondents

_____

ORIGINAL PROCEEDING IN PROHIBITION
WRIT GRANTED AS MOULDED

_____

Submitted: May 4, 2021
Filed: June 15, 2021

Michael D. Dunham, Esq.
Caleb B. David, Esq.
Shuman McCuskey Slicer PLLC
Charleston, WV
Counsel for Petitioners, Health Care
Alliance, Inc. and HCFS Health
Care Financial Services, LLC d/b/a
Alcoa Billing Center

Steven S. Wolfe, Esq.
Wolfe, White & Associates
Logan, WV
Counsel for Respondent Starr

JUSTICE ARMSTEAD delivered the Opinion of the Court.

JUSTICE HUTCHISON concurs and reserves the right to file a separate opinion.

SYLLABUS BY THE COURT

1.      "'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.  It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.  W. Va. Code 53-1-1.'  Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)."  Syllabus Point 1, *State ex rel. Healthport Technologies, LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017).


2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

i

3.     "A writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."  Syllabus Point 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992).

4.     "The party who seeks to establish the propriety of a class action has the burden of proving that the prerequisites of Rule 23 of the West Virginia Rules of Civil Procedure have been satisfied."  Syllabus Point 6, *Jefferson County Board of Education v. Jefferson County Education Association*, 183 W. Va. 15, 393 S.E.2d 653 (1990).

5.     "Before certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a) – numerosity, commonality, typicality, and adequacy of representation – and has satisfied one of the three subdivisions of Rule 23(b).  As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party."  Syllabus Point 8, *In re West Virginia Rezulin Litigation*, 214 W. Va. 52, 585 S.E.2d 52 (2003).

6.     "When a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority prerequisites of Rule 23(b)(3) have been satisfied.  The thorough analysis of the

predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate.  In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.  This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification."  Syllabus Point 7, *State ex rel. Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020).

ARMSTEAD, J.:

This case involves a petition for writ of prohibition seeking to preclude the Circuit Court of Logan County from enforcing its order granting a motion to compel discovery. The order at issue compelled Petitioner to disclose: (1) the names and addresses of all individuals with a West Virginia billing address who received communications from Health Care Financial Services (hereinafter "HCFS") between June 2016 and the time Respondent Starr filed her Complaint; and (2) account information regarding the individuals who received these particular communications. Further, Petitioner was ordered to provide this information "in searchable format." The circuit court further ordered that such responses "shall not be disclosed by [Respondent Starr], or [Respondent Starr's] counsel, outside the scope of this litigation, and [Respondent Starr] shall return or destroy the protected health information at the end of the litigation or proceeding."

After careful review of the parties' briefs and oral arguments, the appendix record, and the applicable law, we find that the circuit court clearly erred and exceeded its legitimate powers by granting the motion to compel. We therefore grant the writ of prohibition, as moulded, and remand this case to the circuit court for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

On June 8, 2020, Respondent Starr filed a Complaint against Health Care Alliance, Inc. ("HCA") and Alcoa Billing Center in the Circuit Court of Logan County.

1

On June 29, 2020, Respondent Starr filed an Amended Class Action Complaint against HCA and HCFS Health Care Financial Services, LLC, dba Alcoa Billing Center ("HCFS"). In her Amended Complaint, Respondent Starr alleges that HCA and HCFS are debt collectors pursuant to the West Virginia Consumer Credit and Protection Act ("WVCCPA"). She further alleges that HCFS sent her a collection letter in 2019, but the letter appears to be from "Alcoa Billing Center." With respect to Alcoa, she alleges that HCFS "has not registered the tradename or dba Alcoa Billing Center with the State of West Virginia" and has, thus, violated the WVCCPA.[1] In particular, Respondent Starr alleges that HCFS violated West Virginia Code § 46A-2-127 which prohibits, in part, the use of "fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims" including "[t]he use of any business, company or organization name while engaged in the collection of claims, other than the true name of the debt collector's business, company or organization[.]" See W. Va. Code § 46A-2-127(a).

On or about June 30, 2020, Respondent Starr served her First Set of Interrogatories and Requests for Production of Documents to HCFS. On August 13, 2020, HCFS responded to the discovery requests, and by letter dated August 18, 2020, counsel

---

[1] In her Amended Class Action Complaint, Respondent Starr alleges the following violations: (1) In Count I, violation of W. Va. Code § 46A-2-127 et seq. as well as W. Va. Code § 46A-1-101 et seq; (2) In Count II, violations of the public policy of West Virginia; (3) In Count III, violation of W. Va. Code § 47-16-1 et seq., W. Va. Code § 46A-2-127 et seq., and W. Va. Code § 46A-6-104 et seq.; (4) In Count IV, Respondent Starr seeks declaratory judgment; and (5) In Count V (individual account), violation of W. Va. Code § 46A-2-127.

2

for Respondent Starr requested supplementation of HCFS's discovery responses. Counsel's letter referenced Interrogatory Nos. 3, 13, and 14 as well as Request for Production Nos. 7 and 11. Respondent Starr filed a Motion to Compel on August 28, 2020, and on the same date, HCFS served supplemental responses to the discovery requests. HCFS served its second supplemental response to the discovery requests on November 12, 2020. Following the supplemental responses, Respondent Starr requested that the circuit court proceed with consideration of her Motion to Compel. However, by that time, the parties had narrowed the issues to be considered down to three discovery disputes: (1) Interrogatory No. 3; (2) Interrogatory No. 13; and (3) Request for Production No. 11.

The requests and the responses are as follows:

## INTERROGATORY NO. 3

**INTERROGATORY NO. 3:** For a period between June 2016 and present, identify all individuals with a West Virginia address whom Defendant HCFS sent written statements, letters, or other written communications evidencing an amount due or allegedly due. Please list the consumer's name and address, date letter was sent, the name of original creditor, original creditor's account or reference number, the amount owed or allegedly owed, and the current balance.[2]

---

[2] HCFS's responses to Interrogatory No. 3 were as follows:

**[ORIGINAL] ANSWER:** Objection. This Interrogatory seeks information that is not relevant and not

3

likely to lead to the discovery of admissible evidence. Furthermore, Defendant HCFS provides billing services for Defendant Health Care Alliance and, thus, cannot release patient account information, pursuant to HIPAA, 45 CFR 164.512(e). Defendants do not currently possess any authorizations from patients that are required under HIPAA to examine records or documents containing protected health information. Additionally, Defendant HCFS does not maintain account information in the manner requested by Plaintiff and is not required to create documents under the West Virginia Rules of Civil Procedure.

**SUPPLEMENTAL ANSWER:** Subject to the previously stated objections, Defendant reiterates that this Interrogatory seeks information that is not relevant and not likely to lead to the discovery of admissible evidence. Simply filing a suit styled as a purported class action does not entitle Plaintiff to information or documents related to specific individuals that would be included in a certified class. Numerosity does not require Plaintiff to know the names and account information for alleged members of the purported class. Instead, the proper procedure would be for a class certification motion to be ruled upon prior to the release of individuals' protected health information. Plaintiff's proposed Stipulated Protective Order does not provide satisfactory assurance that the information requested will not be used outside this lawsuit. Plaintiff simply cites to "numerosity, typicality, commonality, adequacy, and superiority/predominance," without any explanation as to why the actual names and account information are relevant to any of the class certification elements. The names and account information of individuals receiving billing statements from Defendant would only be relevant for notification purposes following certification. Because Plaintiff has failed to provide any explanation as to the relevance of the names and account information and how, at this stage, the information would be used for purposes of this lawsuit, Defendant maintains its objections and is not satisfactorily assured that the HIPAA-protected information would only be used for purposes of this lawsuit. Furthermore, Defendant does not maintain account

4

## INTERROGATORY NO. 13

**INTERROGATORY NO. 13:** Please provide a list of all medical or health care providers in West Virginia towit [sic] the Defendant HCFS provides services.[3]

information in the manner requested by Plaintiff and is not required to create documents.

**SECOND SUPPLEMENTAL ANSWER:** Subject to the previously stated objections, and per the parties' agreement regarding resolution of a discovery dispute, Defendant states that, from June 1, 2016 to the present, approximately 11,630 individuals *may have* received statements sent by Defendant HCFS with the name of Alcoa Billing Center listed as the return address for services rendered by Defendant Healthcare Alliance, Inc. at Logan Regional Medical Center. Defendant cannot state this figure with absolute certainty because it would require Defendant to access and review the confidential account information for each and every patient separately. Not all of these 11,630 patients may have received a statement from Defendant HCFS; however, these 11,630 patients' accounts were in a status in which the patient, rather than an insurer, was identified as the responsible party for the services received. Thus, 11,630 represents the *maximum* number of patients that may have received a statement. These 11,630 patients account for 21,775 dates of service.

[3] HCFS's responses to Interrogatory No. 13 were as follows:

**[ORIGINAL] ANSWER:** Objection. This Interrogatory seeks information that is not relevant nor likely to lead to the discovery of admissible evidence.

**SUPPLEMENTAL ANSWER:** Subject to the previously stated objection, Defendant reiterates that this

**REQUEST FOR PRODUCTION NO. 11:** For Defendant HCFS, please produce in searchable formatting (such as excel) the identification of every individual with a West Virginia address that was sent a letter, account statement, bill, or written request for payment between June 2016 and present. For every such individual, please produce in electronic searchable format, excel format, or other format the consumer's name and address, date letter was sent, the name of original creditor, original creditor's account or reference number, the amount owed or allegedly owed, and the current balance.[4]

---

Interrogatory seeks information that is not relevant nor likely to lead to the discovery of admissible evidence. Plaintiff asserts that "the information sought is highly relevant to the scope, size, and appropriate parties in the lawsuit." Plaintiff's claims relate to a bill received for services provided by Health Care Alliance, Inc. at Logan Regional Medical Center. There is no relevance to Defendant HCFS's business relationships with any other entities.

[4] HCFS's responses to Request for Production No. 11 are as follows:

**[ORIGINAL] RESPONSE:** Objection. This Request seeks information that is not relevant and not likely to lead to the discovery of admissible evidence. Furthermore, Defendant HCFS provides billing services for Defendant Health Care Alliance and, thus, cannot release patient account information, pursuant to HIPAA, 45 CFR 164.512(e). Defendants do not currently possess any authorizations from patients that are required under HIPAA to examine and disclose records or documents containing protected health information. Additionally, Defendant HCFS does not maintain account

6

information in the manner requested by Plaintiff and is not required to create documents under the West Virginia Rules of Civil Procedure.

**SUPPLEMENTAL RESPONSE:** Subject to the previously stated objections, Defendant reiterates that this Request seeks information that is not relevant and not likely to lead to the discovery of admissible evidence. Simply filing a suit styled as a purported class action does not entitle Plaintiff to information or documents related to specific individuals that would be included in a certified class. Numerosity does not require Plaintiff to know the names and account information for alleged members of the purported class. Instead, the proper procedure would be for a class certification motion to be ruled upon prior to the release of individuals' protected health information. Plaintiff's proposed Stipulated Protective Order does not provide satisfactory assurance that the information requested will not be used outside this lawsuit. Plaintiff simply cites to "numerosity, typicality, commonality, adequacy, and superiority/predominance," without any explanation as to why the actual names and account information are relevant to any of the class certification elements. The names and account information of individuals receiving billing statements from Defendant would only be relevant for notification purposes following class certification. Furthermore, in the event that the Court would certify a class, an administrator would be appointed to arrange for notification and would be the only individual with need for the requested information. Thus, because the names and account information of individuals receiving billing statements from Defendant are irrelevant and cannot be sued for purposes of this litigation, Defendant is not satisfactorily assured that the requested information would be used only for purposes of this litigation.

Because Plaintiff has failed to provide any explanation as to the relevance of the names and account information and how, at this stage, the information would be used for purposes of this lawsuit, Defendant maintains its objections and is not

7

By order entered on December 4, 2020, the Circuit Court of Logan County granted Respondent Starr's motion to compel. In its order, the circuit court found that the account information requested by Respondent Starr (including the name of original creditor, account number, amount allegedly owed, and current balance) "goes towards proving at the certification stage common questions of fact or law, typical claims or common defenses, i.e., 'commonality' and 'typicality.'" As to the specific discovery

---

satisfactorily assured that the HIPAA-protected information would only be used for purposes of this lawsuit.

Furthermore, Defendant does not maintain account information in the manner requested by Plaintiff and is not required to create documents. *See Scantibodies Lab., Inc. v. Church & Dwight Co.*, Civil Action No. 14-cv-2275, 2016 U.S. Dist. LEXIS 154396 *68-69 (Nov. 4, 2016 S.D.N.Y) ("[T]his Court notes that a party has no obligation to create new documents in discovery.") (citing *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 44 (S.D.N.Y. 2010); *see also Condry v. Buckeye S.S. Co.*, 4 F.R.D. 310, 1945 U.S. Dist. LEXIS 1372 (D. Pas. 1945) ("But until this existence is established so that the documents asked for can be identified and this materiality established, there can be no order to produce under Rule 34."; *Alexander v FBI*, 194 F.R.D. 305, 2000 U.S. Dist. LEXIS 8867 (D.D.C. 2000) ("Rule 34 only requires a party to produce documents that are already in existence."); *Harris v. Advance Am. Cash Advance Ctrs.*, 288 F.R.D. 170, 2012 U.S. Dist. LEXIS 173081 (S.D. Ohio 2012) ("Defendant is not required to create documents in response to plaintiff's requests for discovery.").

**SECOND SUPPLEMENTAL RESPONSE:** Subject to the previously stated objections, please see Defendant HCFS's Second Supplemental Answer to Interrogatory No. 3.

requests, the order required Petitioner HCFS to supplement its responses to Request for Production No. 11 and Interrogatory No. 3 within sixty days of the entry of the order. Petitioner was further ordered to supplement its response to Interrogatory Nos. 13 and 14 within ten (10) days of the ruling.[5]

Petitioners then filed the instant petition for writ of prohibition.

## II. STANDARD OF REVIEW

The factors to be considered for issuance of a writ of prohibition are well-established:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a

---

[5] Prior to entry of the circuit court's order, Respondent Starr filed a reply indicating that the parties had narrowed the issues down to the following three discovery disputes: Interrogatory No. 3, Request for Production No. 11, and Interrogatory No. 13. Therefore, it appears that Interrogatory No. 14 was not at issue at the time of the hearing. However, the circuit court's order of December 4, 2020, ordered HCFS to supplement its response to Interrogatory No. 14 within ten (10) days of the ruling. From the text of the petition it does not appear that Petitioner HCFS specifically seeks extraordinary relief as to this aspect of the order and we therefore decline to address it.

9

useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

"'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code 53-1-1.' Syllabus Point 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)." Syl. Pt. 1, *State ex rel. Healthport Technologies, LLC v. Stucky*, 239 W. Va. 239, 800 S.E.2d 506 (2017). In addition, this Court has held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992). With these standards in mind, we turn to the parties' respective arguments.

### III. DISCUSSION

Petitioners argue that the circuit court committed clear legal error and exceeded its legitimate powers by granting Respondent Starr's motion to compel. They advance multiple arguments as to why the information sought should not be produced. We will begin our review by looking at the specific information that is sought by Respondent Starr in Interrogatory No. 3 and Request for Production No. 11. In Interrogatory No. 3,

Respondent Starr seeks the following information about individuals to whom HCFS sent written communications between June 2016 and the present:

(1)    consumer's names and addresses;
(2)    date letter was sent;
(3)    the name of the original creditor;
(4)    original creditor's account or reference number;
(5)    the amount owed or allegedly owed; and
(6)    the current balance.

In Request for Production No. 11, Respondent Starr requested Petitioners to produce the information above in an electronic searchable format "such as [E]xcel."

In support of its decision to grant the discovery at issue, the circuit court relied upon this Court's ruling in *Love v. Georgia Pacific Corp.*, 214 W. Va. 484, 590 S.E.2d 677 (2003) in which we concluded that:

> Where a party seeks to proceed as a class representative under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], and where issues related to class certification are present, reasonable discovery related to class certification issues is appropriate, particularly where the pleadings and record do not sufficiently indicate the presence or absence of the requisite facts to warrant an initial determination of class action status.

*Id.* at 488, 590 S.E.2d at 681 (2003). Because the circuit court relied upon our decision in *Love*, it is evident that it determined that issues related to class certification are, in fact, present in this case. However, our review of whether the circuit court correctly ordered disclosure of the subject material does not stop with its determination that "issues related

11

to class certification are present." Instead, we must also determine whether the discovery the circuit court compelled was "reasonable."

Petitioners argue that the detailed disclosures ordered by the circuit court are not reasonable, particularly where, as here, no class has yet been certified. First, Petitioners maintain the disclosure of health information related to non-party individuals involves patient information protected by the federal Health Insurance Portability and Accountability Act ("HIPAA"). The requested discovery at issue includes the names, addresses and account information for health care services of non-litigant third-party individuals. In its original responses to Respondent's discovery requests, Petitioner HCFS claimed that the information sought is "patient account information" and cannot be released pursuant to HIPAA, 45 CFR 164.512(e). Because the circuit court included specific provisions within its order to protect the requested information from improper disclosure, we are not persuaded by Petitioner's argument in this regard. The circuit court correctly addressed the HIPAA argument and ordered that the disclosure would be made pursuant to 45 C.F.R. 164.512(e)(v)[6], which permits disclosures in judicial proceedings if appropriate measures are taken to ensure that the information is protected from improper disclosure.

---

[6] Although the circuit court erroneously cited the provisions of 45 C.F.R. 164.512(e)(v), it is evident from the language referenced in the circuit court's order that the appropriate section to which the court was referring was 45 C.F.R. 164.512(e)(1)(v).

12

*See* 45 C.F.R. 164.512(e).  The circuit court's order contains protective order language set forth in 45 C.F.R. 164.512(e)(1)(v), which provides:

> (v) For purposes of paragraph (e)(1) of this section, a qualified protective order means, with respect to protected health information requested under paragraph (e)(1)(ii) of this section, an order of a court or of an administrative tribunal or a stipulation by the parties to the litigation or administrative proceeding that:
>
> (A) Prohibits the parties from using or disclosing the protected health information for any purpose other than the litigation or proceeding for which such information was requested; and
>
> (B) Requires the return to the covered entity or destruction of the protected health information (including all copies made) at the end of the litigation or proceeding.

45 C.F.R. 164.512(e)(1)(v).  The circuit court not only stated that its order was made pursuant to the applicable HIPAA provisions, but appropriately ordered, in Paragraph 7 of its order, that "[t]he responses and answers are deemed protected and shall not be disclosed by Plaintiff, or Plaintiff's counsel, outside the scope of this litigation, and Plaintiff shall return or destroy the protected health information at the end of the litigation or proceeding." Accordingly, we find that the ordered disclosures are not prohibited pursuant to the provisions of HIPAA.

Although we are unpersuaded by Petitioner's HIPAA argument, we are concerned about the broader privacy interests where, as here, health-related records concerning non-litigant, third-party individuals are at issue.  Respondent Starr has

13

requested Petitioner HCFS provide the names, addresses and account information for all persons with a West Virginia address to whom it sent written statements, letters, or other written communications evidencing an amount due or allegedly due.[7] Significantly, Respondent Starr is asking for the names, addresses, and information contained in medical billing statements that were sent to **non-litigant third-party** individuals. Although it is assumed that Respondent Starr will seek to certify a class that may include these individuals in the future, no such class has been certified at this stage of the proceedings. This case is in the pre-certification stage and the records requested relate to individuals who have not yet been, and who may or may not be, named as class members in the future.

The United States Supreme Court has clearly recognized the distinction between disclosure of information related to class members where a class has, in fact, been certified, as opposed to pre-certification disclosure designed to assist in determining the appropriateness and scope of a class certification. In *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) the United States Supreme Court stated that while it did not hold that class members' names and addresses never can be obtained under the discovery rules, "[t]here is a distinction in principle between requests for identification of class members that are made to enable a party to send notice and requests that are made for true discovery purposes." *Id.* at n. 20. In the case *sub judice*, Respondent Starr is clearly not seeking the

---

[7] The discovery request was limited in time for "a period between June 2016 and present."

14

names and addresses in order to send notice as this case has not yet been, and may or may not be, certified.

This Court has also recognized that the privacy rights of non-parties to litigation must be protected in the discovery process. When "[w]eighing the requesting party's need to obtain the information against the burden that producing the information places upon [the disclosing party], [courts] must be cognizant of the privacy rights of non-litigant third parties." *State ex rel. West Virginia Fire & Cas. Co. v. Karl*, 202 W. Va. 471, 476, 505 S.E.2d 210, 215 (1998). Although the *Karl* case did not involve class certification, it involved a request for claim files of non-litigants, and this Court required the copies of the claim files to be redacted to "adequately protect the privacy interests of the non-litigants by redacting names, addresses, personal medical information, and other identifying material from the records." *Id.* at 476, 505 S.E.2d at 215. Eighteen years later, this Court relied upon *Karl* in again holding that the names, addresses and telephone numbers of non-party insureds should be redacted from any documents produced in discovery in that case. *State ex rel. State Farm Mut. Auto. Ins. Co. v. Cramer*, 237 W. Va. 60, 785 S.E.2d 257 (2016).

In seeking the discovery at issue, we are mindful of the burden imposed upon Respondent Starr. "The party who seeks to establish the propriety of a class action has the burden of proving that the prerequisites of Rule 23 of the West Virginia Rules of Civil Procedure have been satisfied." Syl. Pt. 6, *Jefferson Cty. Bd. of Educ. v. Jefferson Cty.*

15

*Educ. Ass'n.*, 183 W. Va. 15, 393 S.E.2d 653 (1990). As we noted in *Love*, a party who is not permitted to conduct discovery on the prerequisites for class certification, may be "severely hampered" in his or her "ability to address and to meet [his or] her burden for class certification under Rule 23." *Love* 214 W. Va. at 488, 590 S.E.2d at 681. However, a party seeking to establish the propriety of a class action does not have the right to conduct unlimited discovery. In this case, Respondent Starr served discovery requests with the Amended Class Complaint on or about June 30, 2020. Unlike the appellant in *Love* who was denied the ability to conduct discovery, it is clear from the record before us that Respondent Starr has served, and received responses to, various interrogatories and requests for production of documents. Therefore, discovery had been ongoing prior to the filing of the instant Petition for Writ of Prohibition. In addition, counsel for Petitioner HCFS represented to the Court, during oral argument in this matter, that class discovery is still ongoing and that the depositions of a corporate representative and Respondent Starr still needed to be taken.

While Respondent must certainly be permitted to engage in certain appropriate discovery, even at the pre-certification stage of her alleged class action suit, such discovery must meet the relevancy requirements of the West Virginia Rules of Civil Procedure. Rule 26 of these rules provide that "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending

action. . . ." W. Va. R. Civ. P. 26(b)(1). Accordingly, at this stage of the proceedings, discovery must be relevant to the certification of the proposed class action.

This court has held that

> [b]efore certifying a class under Rule 23 of the *West Virginia Rules of Civil Procedure* [1998], a circuit court must determine that the party seeking class certification has satisfied all four prerequisites contained in Rule 23(a)–numerosity, commonality, typicality, and adequacy of representation–and has satisfied one of the three subdivisions of Rule 23(b). As long as these prerequisites to class certification are met, a case should be allowed to proceed on behalf of the class proposed by the party."

Syl. Pt. 8, *In re W. Va. Rezulin Litig.*, 214 W. Va. 52, 585 S.E.2d 52 (2003). The circuit court noted that the information sought in Interrogatory No. 3 and Request For Production No. 11 was "relevant and permissible discovery pursuant to Rule 26 at this pre-certification stage of discovery to afford Plaintiff the opportunity to meet their [sic] burden under Rule 23(a)[8] [as to] numerosity, commonality, typicality, adequacy, and at least one Rule 23(b)[9]

---

[8] West Virginia Rule of Civil Procedure 23(a) provides as follows:

> (a) *Prerequisites to a class action.*---One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

[9] West Virginia Rule of Civil Procedure 23(b) provides that a class action may be maintained only if the prerequisites of Rule 23(a) are met in addition to at least one of the following requirements:

ground." However, the circuit court did not provide any findings explaining why such information would help Respondent meet her burden or to which specific prerequisites of a class action set forth in Rule 23 the requested discovery would be relevant.

_____

(1) The prosecution of separate actions by or against individual members of the class would create risk of

(A) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(B) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

W. Va. R. Civ. P. 23(b).

18

Indeed, Respondent Starr has failed to establish how a non-litigant third-party individual's name, address or account information will help prove any of the Rule 23 prerequisite factors for certifying a class. By her own admission, "the central issue raised by this action is whether defendant violated W. Va. Code §46A-2-127 et seq. in collecting debt in the name of Alcoa Billing Center[.]" The specific information sought (name, address and account information) does not appear relevant in meeting her burden in this regard.

Further, in her Amended Class Action Complaint, Respondent Starr does not identify the non-litigant third-party individuals' names, addresses, or account information as "[q]uestions of law and fact that are common to the entire Class[.]" The Amended Class Action Complaint contains a paragraph that identifies questions of law and fact that are common to the entire class under the heading "Predominance." The questions are:

a. Whether the defendant HCFS was using the name Alcoa Billing Center illegally and without registering the name as a trademark or DBA (doing business as) with the State of West Virginia to legally use the name in the pursuit of the collection of claims;

b. Whether Plaintiff and Class Members were contacted by the defendants for the purpose of collecting consumer debt in the State of West Virginia when the defendant were [sic] not licensed and bonded to do so in violation of the law;

c. Whether Alcoa Billing Center is a true name of the defendant Health Care Services Financial, LLC;

d. Whether defendants are legally responsible for damages incurred by Plaintiffs and the Class Members for their

19

conduct surrounding the use of Alcoa Billing Center and the unlicensed collection of debt;

e.  Whether either of the Defendants are unlicensed collection agencies engaged in the collection of debt.

Respondent Starr purports to bring claims "on behalf of all West Virginia residents who [] received written communications from defendants attempting to collect debt using the name Alcoa or Alcoa Billing Center while defendants were not licensed and bonded in West Virginia to do so."  We are at a loss to understand how names, addresses and account information of non-litigant, third-party individuals will help Respondent Starr meet her burden at this stage given that the central issue and questions of fact and law she identified focus on the conduct of HCFS, not the identities or addresses of potential class members or specific amounts owed by such perspective class members.

Respondent Starr argues that the information she seeks will permit the circuit court to "meaningfully address the predominance issues that the *Surnaik* decision discussed."[10]  In Syllabus Point 7 of *Surnaik Holdings of WV, LLC v. Bedell*, 244 W. Va. 248, 852 S.E.2d 748 (2020), we held that

> [w]hen a class action certification is being sought pursuant to West Virginia Rule of Civil Procedure 23(b)(3), a class action may be certified only if the circuit court is satisfied, after a thorough analysis, that the predominance and superiority

---

[10] The circuit court's order does not mention our decision in *Surnaik*.  Respondent Starr argues that the circuit court made its decision at a hearing which appears to have been held on November 18, 2020, prior to our holding in *Surnaik*.  However, the circuit court's order was entered after the *Surnaik* case was decided.

20

prerequisites of Rule 23(b)(3) have been satisfied. The thorough analysis of the predominance requirement of West Virginia Rule of Civil Procedure 23(b)(3) includes (1) identifying the parties' claims and defenses and their respective elements; (2) determining whether these issues are common questions or individual questions by analyzing how each party will prove them at trial; and (3) determining whether the common questions predominate. In addition, circuit courts should assess predominance with its overarching purpose in mind—namely, ensuring that a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results. This analysis must be placed in the written record of the case by including it in the circuit court's order regarding class certification.

Although our decision in *Surnaik* requires the circuit court to conduct a thorough analysis, it is not to be relied upon as a vehicle to permit unbridled discovery.

We are not convinced that the specific requested information is relevant to any of the enumerated prerequisites for class certification set forth in Rule 23, including the predominance factor discussed in *Surnaik*. Had Respondent alleged that only potential class members treated at a particular facility or who lived in a particular city or town were to be included within the class to be certified, their names, addresses and service providers may be relevant at this pre-certification stage. She has not made any such allegation. Similarly, had Respondent alleged that only class members who owed in excess of a certain dollar amount were potential members of the potential class, or that individuals would be treated differently within the class, perhaps in terms of numerosity or commonality, based

21

on the amounts each individual owed, the amounts owed might be relevant to the class certification. Again, however, she has made no such allegations.

Moreover, as to the specific question of predominance as discussed in *Surnaik*, it would not appear that the identifying data requested would be relevant to "identifying the parties' claims and defenses and their respective elements," determining "whether these issues are common questions or individual questions by analyzing how each party will prove them at trial" or whether "common questions predominate." Again, Respondent claims that the members of the potential class would be so included in the affected class because they were unlawfully contacted by Petitioners for debt collection purposes. Regardless of the potential class member's name, address, amount owed or the identity of the healthcare provider whose services gave rise to the debt, it would appear that the evidence establishing the alleged illegal contact, and any defense that may be asserted, would be the same.

Clearly, Respondent seeks certification of a class that would arguably include **any** individual in West Virginia who was contacted by HCFS for the purpose of collecting consumer debt. Specifically, as the circuit court's order states, Respondent purports to bring her class action on behalf of all West Virginia residents who "received written communications from defendants attempting to collect debt using the name Alcoa or Alcoa Billing Center while defendants were not licensed and bonded in West Virginia to do so."

In this regard, the patients' name and local address, the identity and account information of the original creditor, the amount originally owed by the patient and the outstanding balance would not appear relevant to determining if class certification is appropriate.

Although we are not persuaded that the specific names, addresses and account information ordered produced is relevant at the pre-certification stage of this matter, the **number of individuals** who are prospective class members would appear relevant, at least to the question of numerosity as set forth in Rule 23 of the West Virginia Rules of Civil Procedure. In its Second Supplemental Discovery Responses, HCFS provided, in part, "from June 1, 2016 to the present, approximately 11,630 individuals may have received statements sent by Defendant HCFS with the name of Alcoa Billing Center listed as the return address for services rendered by Defendant Healthcare Alliance, Inc. at Logan Regional Medical Center." However, as indicated in such response, the numerical information provided by HCFS was limited to statements sent for services rendered at Logan Regional Medical Center. The Respondent has asserted that the class for which she seeks certification includes **all West Virginia residents** who received written communications from Petitioners attempting to collect debt using the name Alcoa or Alcoa Billing Center. Respondent's claims on behalf of such potential class are not limited only to patients of Logan Regional Medical Center. Therefore, the number of West Virginia residents to whom such written communication was forwarded, regardless of the medical provider to which they relate, is relevant to establishing the class certification prerequisites

23

set forth in Rule 23. Accordingly, Petitioner HCFS should be directed to supplement its discovery responses to provide the number of West Virginia residents to whom it sent written communications attempting to collect debt, regardless of the medical facility at which they received treatment.

Likewise, Interrogatory No. 13 seeks a list of all medical or health care providers in West Virginia to which the Petitioner HCFS provides services. The circuit court briefly addressed this interrogatory by ordering HCFS to supplement its response to Interrogatory No. 13. HCFS objected to this request on the basis of relevancy and indicated in its original response that Interrogatory No. 13 is "not relevant nor likely to lead to the discovery of admissible evidence." In its supplemental response, HCFS reasserted the relevancy objection and further noted that Respondent Starr's claim relates to "a bill received for services provided by Health Care Alliance, Inc. at Logan Regional Medical Center. There is no relevance to Defendant HCFS's business relationships with any other entities." We disagree with HCFS's assertion as to the relevance of such information. In order to establish the scope of the potential class Respondent seeks to have certified, it is possible that the response to Interrogatory No. 13 may lead to the discovery of admissible evidence. Respondent Starr may possibly obtain information relevant to the potential certification of the class from the businesses to whom Respondent provided services. Therefore, the circuit court did not exceed its legitimate powers in compelling HCFS to supplement its response to Interrogatory No. 13.

24

## IV. CONCLUSION

For the reasons set forth above, this Court finds that the circuit court clearly erred and exceeded its legitimate powers in compelling Petitioner HCFS to disclose at this pre-certification stage names and addresses of non-litigant, third-party individuals to whom debt collection letters were sent, dates of letters sent by HCFS, names of the original creditors, the original creditors' account or reference numbers, the amount owed or allegedly owed and the current balance owed. However, Petitioner HCFS should be directed to supplement its discovery responses to provide the number of West Virginia residents to whom it sent written communications during the relevant period, regardless of the medical facility at which they received treatment. Finally, the circuit court did not exceed its authority in directing Petitioner HCFS to supplement its response to Interrogatory 13 and the writ granted herein shall not prohibit enforcement of the circuit court's order in relation to Interrogatory No. 13.[11]

Accordingly, we grant the requested writ of prohibition, as moulded, and remand this case for further proceedings consistent herewith.

Writ granted as moulded.

---

[11] Request for Production No. 11 seeks the same information requested in Interrogatory No. 3, but requests that the information be produced in a searchable format "such as excel" or "other format." Because we have ruled, for the reasons set forth above, that the circuit court clearly erred and exceeded its legitimate powers in compelling production of such data, it is unnecessary for the court to determine whether the circuit court further erred in directing that it be produced in "searchable format."

25